IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-02605-WYD-BNB

REGINA HENRY;
DAN HENRY;
SHERRI MILLER;
KRYSTAL SULLIVAN; and
DELORES SULLIVAN,

      Plaintiff(s),

v.

BRIDGESTONE CORPORATION; and
BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, formerly
BRIDGESTONE/FIRESTONE, INC.,

      Defendant(s).

---

## ORDER

---

THIS MATTER is before the Court on Defendant Bridgestone Corporation's

Motion to Dismiss for Lack of Jurisdiction, filed February 13, 2006 (docket #18)

("Motion to Dismiss").  A hearing was held Thursday, June 29, 2006.  For the reasons

set forth on record at the hearing and in this Order, the Motion to Dismiss is **DENIED**.

## I.    BACKGROUND

This case arises out of an automobile accident.  According to the complaint, on

October 10, 2003, Jesus Anima was driving a 1998 Pontiac Firebird northbound on

Highway 71 in Nebraska.  Compl. ¶ 7.  Plaintiffs Regina Henry and Krystal Sullivan

were passengers sitting in the rear seat of the vehicle.  *Id.*  The vehicle was equipped

with Bridgestone Potenza RE 900 tires.  *Id.*  While Plaintiffs were traveling on Highway

71, the tread and top belt of the right rear Bridgestone Potenza RE 900 tire separated

from the tire causing Jesus Anima to lose control of the vehicle. *Id.* ¶ 8.  The vehicle

ran off the road, hit a ditch, and rolled approximately two times.  *Id.*  Both Regina Henry

and Krystal Sullivan were ejected from the vehicle.  *Id.*  The vehicle landed on top of

Krystal Sullivan.  *Id.*  The complaint alleges that, "Defendants designed and

manufactured Bridgestone Potenza RE 900 tires," and that Defendants are strictly

liable for the injures Plaintiffs sustained because the tire was "designed, manufactured,

prepared, sold, and supplied by Defendants in a defective condition."  *Id.* ¶¶ 6, 14.

The complaint further alleges that the Defendants negligently designed, manufactured,

inspected, and tested the tire.  *Id.* ¶ 19.

Plaintiffs Regina Henry and Krystal Sullivan seek to recover damages for injuries

sustained in the accident.  Plaintiffs Dan Henry and Sherri Miller, parents of Plaintiff

Regina Henry, and Plaintiff Delores Sullivan, mother of Plaintiff Krystal Sullivan, seek

to recover damages including loss of time, loss of earnings, and expenses for medical,

surgical, and rehabilitative care and treatment.  *Id.* ¶¶ 9-12.

The complaint states that Defendant Bridgestone Corporation ("Bridgestone") is

a Japanese corporation engaged in the business of designing, manufacturing, and

selling automobile tires.  *Id.* ¶ 2. Defendant Bridgestone Firestone North American Tire,

LLC ("Firestone") is a Delaware limited liability company with its principal place of

business in the Tennessee, and is engaged in the business of designing,

manufacturing, and selling automobile tires.  *Id.* ¶ 3.

## II.   MOTION TO DISMISS

### A.   Legal Standard

The plaintiff bears the burden of establishing personal jurisdiction over the

defendant.  *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247

(10th Cir. 2000).  However, the plaintiff's burden will vary "depending on the pretrial

procedure employed by the district court."  *FDIC v. Oaklawn Apartments*, 959 F.2d 170,

174 (10th Cir. 1992).  The district court may decide which procedures will be employed

in reviewing a motion to dismiss for lack of jurisdiction.  *FDIC*, 959 F.2d at 174.

"[W]hen the district court holds a pretrial evidentiary hearing to resolve factual disputes

relating to jurisdictional questions, the plaintiff has the burden to prove facts supporting

jurisdiction by a preponderance of the evidence."  *Id.*

The Court must engage in a two-step analysis in determining whether the

exercise of personal jurisdiction is appropriate.  *Wenz v. Memery Crystal*, 55 F.3d

1503, 1507 (10th Cir. 1995).  The Court "must initially determine whether the exercise

of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of

state law, . . . . and then determine whether the exercise of jurisdiction comports with

the due process requirements of the Constitution."  *Wenz*, 55 F.3d at 1506-07.

In this case, there are two sections of the Colorado long-arm statute that may be

implicated.  Colo. Rev. Stat. § 13-1-124 (2005).  First, section 13-1-124(1)(b) allows the

court to exercise personal jurisdiction over a defendant who commits a tortious act

within the state.  Colorado courts have held this provision of the Colorado long-arm

statute can be satisfied when the tortious conduct occurs in Colorado, or when tortious

conduct initiated in another state causes injury in Colorado.  *Classic Auto Sales, Inc. v.*

*Schocket*, 832 P.2d 233, 235-236 (Colo. 1992); *Wenz*, 55 F.3d at 1507.[1]  Second,

section 13-1-124(1)(a) allows the court to exercise jurisdiction when the cause of action

arises from the transaction of any business in Colorado.  Because this section of the

long-arm statute has been construed by the Colorado Supreme Court as allowing

personal jurisdiction to the full extent permitted under federal law, "the Court's analysis

collapses into a single inquiry, whether the exercise of personal jurisdiction over [the

defendant] comports with due process."  *Nat'l Business Brokers, Ltd. v. Jim Williamson*

*Prods., Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), *aff'd*, 16 Fed. Appx 959 (10th

Cir. 2001); *see also Safari Outfitters, Inc. v. Superior Ct.*, 448 P.2d 783, 784 (Colo.

1968).

"'[D]ue process requires only that ... [the defendant] have certain minimum

contacts with [the forum state] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'"  *Trierweiler v. Cruxton and*

*Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quotation omitted).  Critical

to the due process analysis "'is that the defendant's conduct and connection with the

forum State are such that [it] should reasonably anticipate being haled into court

there.'"  *Trierweiler*, 90 F.3d. at 1534 (quotations omitted).  The reasonable anticipation

requirement is satisfied if the defendant has engaged in "some act by which [it]

purposefully avails itself of the privilege of conducting activities with the forum State,

---

[1]Bridgestone argues section 13-1-124(1)(b) does not apply because both the accident and the injury occurred in Nebraska.  Plaintiffs did not dispute this argument in their response to Bridgestone's Motion to Dismiss.

thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The "minimum contacts" standard can be met by showing the existence of either specific jurisdiction or general jurisdiction. *Trierweiler*, 90 F.3d at 1532. Specific jurisdiction exists over a nonresident defendant "'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998) (quoting *Burger King Corp.*, 471 U.S. at 471-72 (internal quotation marks omitted)). When the "court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state." *OMI Holdings,* 149 F.3d at 1091 (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 (1984)). However, in order for the court to exercise general jurisdiction, a more stringent test is applied. *Id.* To meet this test a plaintiff must show that a defendant has continuous and systematic general business contacts with the forum state. *Id.* The court still "must see to it that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Trierweiler*, 90 F.3d at 1533 (quoting *World-Wide Volkswagen Corp. V. Woodson,* 444 U.S. 286, 292 (1980)).

B.   Analysis

Defendant Bridgestone moves to dismiss the claims brought against it in this case based on lack of personal jurisdiction. Bridgestone argues that the Colorado

long-arm statute does not subject it to jurisdiction in Colorado because it does not transact any business in Colorado, and the conduct or the injuries at issue did not occur in Colorado.  Bridgestone further argues that Plaintiffs cannot establish specific jurisdiction because Bridgestone has not purposely directed its activities at Colorado or availed itself of the protections of Colorado law.  In addition, Bridgestone contends that it is not subject to this Court's general jurisdiction because it does not have continuous or systematic contacts with Colorado.

Plaintiffs maintain that specific jurisdiction is proper over Bridgestone because it designs, manufactures, and sells tires that are produced and distributed in the United States.  Further, Plaintiffs argue there is sufficient evidence of Bridgestone's continuous and systematic activity in Colorado to give rise to general jurisdiction. Finally, Plaintiffs assert that Bridgestone operates Firestone as its agent in Colorado, and thus Firestone's contacts with Colorado may be imputed to Bridgestone.

Attached to Bridgestone's Motion to Dismiss is the Affidavit of Tomohiro Nakamoto.  Nakamoto states that Bridgestone is a Japanese corporation with its headquarters in Tokyo and that it does not do business in, or otherwise have contacts with, Colorado.  Nakamoto Aff. ¶¶ 4, 6.  According to Nakamoto, Bridgestone only designs, manufactures, and sells tires in Japan through transactions governed by Japanese law.  *Id.* ¶ 5.  Any tires manufactured by Bridgestone that are sold in Colorado are originally purchased by third parties from Bridgestone in Japan.  *Id.* ¶ 6. In addition, Nakamoto states that Bridgestone did not design, manufacture, or sell the Bridgestone Potenza RE 900 tire, the tire at issue in this case, as that particular tire is

manufactured by Firestone at its facility in Wilson, North Carolina.  *Id.* ¶ 9.  Nakamoto

further states that Firestone is a separate corporation that is a subsidiary of another

separate Bridgestone subsidiary.  *Id.* ¶ 7.  As a subsidiary, Firestone has at all relevant

times remained a separate corporation and Bridgestone does not conduct business in

Colorado through Firestone, establish daily management policies for Firestone, or

control daily operations of Firestone.  *Id.* ¶ 16.  Bridgestone contends (1) that it does no

business in Colorado nor does it have a registered agent for service of process here;

(2) has never manufactured, designed, sold, delivered, or issued warranties on any

good or product in Colorado; (3) has not participated in Firestone's decision to sell or

deliver any product in Colorado; and (4) has never entered into a contract in Colorado

or paid taxes here.  *Id.* ¶¶ 10-12.

It is undisputed that the accident giving rise to the claims in this case occurred in

Nebraska and that the allegedly defective tire was manufactured at a Firestone facility

in North Carolina.  However, this Court may exercise general jurisdiction over a

defendant based on the defendant's systematic and continuous business contacts with

the forum, so long as the exercise of jurisdiction does not offend traditional notions of

fair play and substantial justice. *Trierweiler*, 90 F.3d at 1533.

Plaintiffs do not directly counter the allegations contained in Nakamoto's

Affidavit, but submit evidence they contend demonstrates that "Bridgestone is

thoroughly engaged in the design, manufacture, and sales of tires produced and

distributed within the United States," and that "Bridgestone plays an integral role in the

production of tires within the United States."  Pls.' Resp. at 5.  In support of their

contention that general jurisdiction over Bridgestone is proper in this case, Plaintiffs rely heavily on an unreported order in *In re Bridgestone/Firestone*, *Inc.*, 2001 WL 34691976 (S.D. Ind., Nov. 14, 2001), in which that court, in a detailed order, found that the plaintiffs had submitted sufficient evidence to establish a prima facie case in support of the court's exercise of general personal jurisdiction over Bridgestone.

In *In re Bridgestone/Firestone,* the District Court for the Southern District of Indiana was the transferee court in a multidistrict litigation proceeding involving claims arising out of the Ford/Firestone tread separation litigation. *Id.* at *1. Bridgestone moved to dismiss the claims asserted against it in that case based on lack of personal jurisdiction. *Id.* Because Bridgestone refused to identify a state in which it could be sued, and maintained that jurisdiction over it by any state would violate due process, the court limited its analysis to a general jurisdiction-due process analysis under Fed. R. Civ. P. 4(k)(2).[2] *Id.* at *4.

Bridgestone attempts to distinguish *In re Bridgestone/Firestone* because that case involved federal claims and because the court analyzed jurisdiction pursuant to Rule 4(k)(2). However, Bridgestone does not dispute the factual information proffered by plaintiffs in *In re Bridgestone/Firestone*, and that factual information is relevant here. Moreover, the court in *In re Bridgestone/Firestone* analyzed whether Bridgestone had "continuous and systematic" contacts with the forum such that maintenance of the suit against Bridgestone would not "offend traditional notions of fair play and substantial

---

[2]Rule 4(k)(2) provides for personal jurisdiction as to federal claims over defendants who are not subject to the jurisdiction of any state so long as the exercise of jurisdiction is consistent with the Constitution and laws of the United States.

justice," which is the same general jurisdiction analysis I perform in this case. *Id.* at *5.
I find the analysis contained in *In re Bridgestone/Firestone* is persuasive and relevant
to the jurisdictional issues raised in this case, and adopt that analysis here.

In *In re Bridgestone/Firestone* the court summarized in detail the evidence
presented by plaintiffs concerning Bridgestone business activities in the United States.
First, the plaintiffs presented evidence that Bridgestone uses Firestone to manufacture
and sell Bridgestone brand tires in the United States. *Id.* at *6. Specifically, "John
Lampe, CEO of Firestone, testified that Firestone 'is responsible for the sales of
Bridgestone branded consumer tires and light truck tires in the United States
replacement market and Bridgestone truck tires both in the replacement market and in
the original equipment market' and that Firestone 'manufactured Bridgestone branded
tires in I believe all of our tire facilities, and we do import Bridgestone branded tires as
well as Firestone branded tires from Japan.'" *Id.* This is consistent with the evidence
presented in this case. For example, even though Bridgestone claims it did not
manufacture the tire at issue, the tire at issue bears the brand name "Bridgestone
Potenza."

Further, the court in *In re Bridgestone/Firestone* noted, "[t]he manufacturing and
sales of these tires certainly constitute considerable contacts in and with the United
States; indeed, depending on the number of Bridgestone brand tires manufactured in
the United States and the amount of the sales made here (information which the Court
does not have before it at this time), it is possible that general jurisdiction could be
premised on these facts alone." *Id.* In the present case, the Plaintiffs presented

evidence that in 1999 Bridgestone's sales at its companies in the Americas "were up 1.55%, to $7.6 billion." Ex. C to Pls.' Resp. at 6.  Further, in 1999 Bridgestone's North American operations were "approaching a market share of 20%, and [it has] become the continent's second-largest supplier of tires." *Id.*  In order to build a 20% market share in North America Bridgestone would necessarily have continuous and systematic contacts in all markets in the United States, including Colorado.  A company could not gain such a large market share through sporadic and insubstantial contacts.  This evidence demonstrates that Bridgestone "not only knows but intends, through ongoing systematic activities, its tire to be sold to consumers in the United States, including Colorado." *See Streckenbach v. Toyota Motor Corp. et al.*, Civil Action No. 05-cv-01352 (D. Colo., Mar. 9, 2006) (finding specific jurisdiction over Bridgestone).

In both this case and in *In re Bridgestone/Firestone*, Bridgestone claims sales of its tires to United States companies in Japan have no bearing on the jurisdictional analysis because Bridgestone itself does not sell the tires in the United States and Bridgestone has no control over where the tires are ultimately sold and used.  The court in *In re Bridgestone/Firestone* rejected this reasoning and decided the location of the sale and the ultimate destination of the tire are not important.  *In re Bridgestone/Firestone*, at *7.  I agree.  Contacts are created through sales to United States companies regardless of where the actual transaction occurs.  *Id.*  These contacts alone may not be continuous and systematic, but they are relevant to the general jurisdiction analysis.  Moreover, Bridgestone's claim that it has no control over where the tires will ultimately be sold is inconsistent with its 1999 annual report.  Ex. C

-10-

to Pls.' Resp.  In that report Bridgestone claims to "supply tires to nearly all the Japanese-owned vehicle plants in North America."  *Id.* at 7.  In addition, Bridgestone claims to be a major supplier to General Motors Corporation and claims Ford Motor Company is its oldest customer in North America.  *Id.*  Further, Bridgestone promotes its "tires through diverse channels, including 1,550 company-owned stores, [its] Family Channel network of some 13,000 independent dealers, and supply arrangements with national mass merchandisers."  *Id.* at 6.  Bridgestone's "multibrand strategy– centered on the Bridgestone, Firestone, and Dayton brands– raised" its sales in the Americas even further.  *Id.* at 7.  These documents demonstrate that Bridgestone knows, and intends that its tires be sold and used throughout the United States, including Colorado.

Plaintiffs in *In re Bridgestone/Firestone* also presented evidence that Bridgestone manufactures Firestone brand tires for sale in the United States markets. *In re Bridgestone/Firestone*, at *7.  "[T]he fact that Bridgestone manufactures and sells Firestone brand tires is further evidence that in the course of the relationship between the two companies, Bridgestone has regular contacts with the United States." *Id.*  This finding is consistent with evidence presented here which shows Bridgestone has a global manufacturing strategy.  According to Bridgestone "[i]t operates 43 tire plants on six continents and develops tires globally through technical centers in Tokyo; Akron, Ohio; and Rome."  Ex. E to Pls.' Resp. at 2.  The "global manufacturing strategy calls for serving each principal market primarily with locally produced tires and for supplementing local production with Japanese exports."  *Id.* at 15.  In 1998 a new tire

plant was opened in Aiken County, South Carolina. *Id.* "[T]he Aiken Plant will have the highest productivity in our global manufacturing organization when it reaches full-scale production." *Id.* Bridgestone's statements regarding its global manufacturing strategy show its intent to enter United States markets not only to sell tires, but to manufacture them as well. Finally, Plaintiffs have presented evidence demonstrating that Bridgestone and Firestone share technology and engineering information. In its 1998 annual report, Bridgestone claims "[p]roductivity in our global manufacturing has risen some 50% in the 1990s. And a big reason for that improvement has been the exploits of our productivity 'combat teams.' Those teams visit our plants worldwide for two months or so at a time to help resolve productivity bottlenecks and quality problems." Ex. E to Pls.' Resp. at 16. This statement exemplifies Bridgestone's involvement in all its tire manufacturing centers.

I find that Plaintiffs have demonstrated Bridgestone's continuous and systematic contacts with the United States, including markets in Colorado. By manufacturing, marketing, and selling its tires throughout the United States with the intention that Bridgestone tires be the best selling tires in the United States, it may be inferred Bridgestone intends its tires will be in every state, including Colorado. This is particularly true in states which include a larger market, such as the Denver, Colorado metropolitan area. Further, considering Bridgestone had $7.6 billion in sales in the Americas in 1999 alone, it does not offend traditional notions of fair play and substantial justice to exercise jurisdiction. Despite Bridgestone's contentions that it is a foreign manufacturer with no ties to Colorado, Plaintiffs have presented evidence of

Bridgestone's systematic and continuous business activities throughout the United States, including Colorado, sufficient to support a finding of general jurisdiction over Bridgestone in this case.

Because I find that I have general jurisdiction over Bridgestone, I need not address Plaintiffs' argument that Firestone operates as Bridgestone's agent, or Plaintiffs' arguments that specific jurisdiction is proper.

**III.**   **CONCLUSION**

For the reasons set forth above, it is hereby

ORDERED that Defendant Bridgestone Corporation's ("Bridgestone") Motion to Dismiss for Lack of Jurisdiction, filed February 13, 2006 (docket #18) is **DENIED.**

Dated:  July 13, 2006

                                  BY THE COURT:


                                  s/ Wiley Y. Daniel
                                  Wiley Y. Daniel
                                  U. S. District Judge